Good morning, your honors. Inga Parsons, appointed counsel for Mr. Martino Rodriguez. Good morning. I would like to reserve five minutes of my time. Your honor, this is a case about bad faith. This is also a case about the notion of suppression. And the point is well taken by the court that suppression is a drastic remedy. But when we have police misconduct, it is often the only remedy. The only check on the police are when they are called to account for their behavior. And for this court to recognize the bad faith in this case. I have never had a case, and I've been doing this for 25 years, where I had a police officer admit that he had done bad faith. But the circumstantial evidence in this case is overwhelming. And it was overwhelming when I asked for a hearing on the issue of bad faith with the district court. And it became painfully clear of the bad faith during trial. And honestly, your honor, I believe these officers continue to misrepresent the facts of what happened to this prosecutor. And I'm not blaming the prosecutors. They're only as good as the evidence that they have. But the point is, is that at no time in the four Title III affidavits, knowing full well who my client was, back in 2011, if not earlier, that he should have been one of the identified targets on those Title III's. What motive would the law enforcement agents have for not naming your client? They didn't gain anything from it? Well, they could have, your honor. What, what, what? One is that there could have been a finding of no probable cause, which was determined by Judge Young in the second affidavit. They also could have avoided- Well, a finding of no probable cause wouldn't have changed what happened. It just wouldn't have meant that your client wasn't named as a target. That didn't mean that what was ruled on the take on the authorized taps couldn't have been used against him.       No. There is a history and you can see if you read between the lines that there is a history of animosity between my client and the police in that town. And I believe what is happening is that they know he's a fighter. He is the only one of the 29 defendants in that case that went to trial. He is the only one that challenged the government. He has challenged, he has resisted authority, sometimes not to his benefit, and I admit that, Your Honor. But the point is this, is that this is about officers following the rules. And you can't escape the conclusion that this was conscious, that it was intentional. I mean, you have a sale that they are attributing to him in 1011. That, to do that, you have to, they have tapes, they have poll cameras, and they have enough evidence. And what I find so frustrating is to see that officers are getting away with just saying whatever they want. All they wanted was a hearing at the outset to explore this issue. We had the goods to do that. Frankly, I think Judge Goebel was focusing more on the notion that, well, we already have the warrants, we already have the information, he already got notice. But that really wasn't the issue that we were claiming. It was in part. But mainly it was this notion that officers, if they're not police, they will continue to take advantage. They will continue to mislead. And motive or not, I do believe it was not to give him notice. I do believe it was not to allow him to get the rights that he should have had in here. And I was stunned, frankly, to see that when they offered the additional excuse about him being on supervised release, excuse me, violation of supervised release, they found that especially frustrating because they knew as a matter of fact that he was out on 9-26. They knew that he was out during that time. But the violation of supervised release, I don't recall that was mentioned in the district court. No, it wasn't, Your Honor. Okay. So that was obviously not part of the district court's ruling. So I don't see where it has anything to do with our review of the district court's ruling. Well, it was offered by the government, Your Honor. I mean, if the government could offer us, you know, quotations from Lewis Carroll, that doesn't mean they become part of the district court record. No, but they're offering it as a factor, Your Honor. Yeah, well. And if it's anything to me, it's at least corroborative of the notion of what is a bad motive. Because if it had been a good motive, that kind of excuse would not be put forward. And I'm sure that excuse came from the officers, and I'm not blaming the prosecutor. But what I am blaming are the officers who deliberately, there is not one unidentified male, U.M. number that is given to him, and yet they give him an U.M. number at some point in the early transcripts, but they don't put it into the target. And, you know, they never really said we did this inadvertently. And now we know that it wasn't inadvertent if they deliberately took the position that because he was in jail, we wouldn't have needed to, which makes no sense, because you can make calls out of jail. And they put in unidentified males and people who were never arrested. Out of all of those unidentified males, I don't believe any of them were arrested. And yet my client, who wasn't even listed as a target, was arrested in this case. It went to trial, and thank goodness got a hung jury. Thank you. Thank you. I'll reserve. Good morning, Your Honors. I'm going to introduce the court, Kelly Lawrence for the United States. I will respond to the defendant's, I'd say, unfounded allegations of bad faith, which I think the district court correctly rejected. But this case is not about bad faith. This case, like Donovan, like Harrigan, is about the government's almost complete and substantial compliance with Title III's requirements, save for one unintentional and truly harmless mistake. That is not the sort of mistake on the case law we know. What do you refer to as the one mistake? The mistake is the allegation, which I think is proven in the facts, that at some point the government did become aware that the defendant was intercepted during the wiretap phase and did not include him as a target subject. Okay. All right. But I think as it's made clear in Donovan and Harrigan, that kind of mistake, that violation of the identification requirement, does not rise to the level of a core concern. It does not implicate the core concerns of Title III. And therefore, when all the other preconditions attached to judicial authorization are met, which they are here. Why didn't they include him? The record, as it stands before the district court, and I do want to clarify something about the supervised release revocation issue, that was not, that is something that the government put forth in the brief on appeal based on what the record is. The record is that Judge O'Toole sentenced him on February 9, 2012, to a nine-month term. Judge Collings, Magistrate Judge Collings, in his detention order, referenced that sentence and said he was released from that sentence on November 3, 2012. Those facts come from the record. They're not extrajudicial-type findings or comments from law enforcement that were made either to me or the trial attorney. I just want to make that clear. It's not something that's a proffered excuse, as I think the appendix characterizes it. Why didn't they include him? Sorry? Why didn't they include him? It's not clear why they didn't include him. I think it would, I think the record indicates that it was a mistake. There's no, sorry? He appeared on 14 different tapes. From the line sheets, which were produced in discovery, but I recognize are not included in the appendix here on appeal, it appears that he was first intercepted on September 26. And it appears also that the first notation on the line sheets is the 12th call on October 20th. That suggests there's a parenthetical from Detective Gregory Brown that says Hidalgo calls him T, possibly Martino Rodriguez. So that's October 20. And then there are subsequently in the line sheets he's referred to by name. So he wasn't included as a target on either the October 20 claim. Or was he not in 14 different tapes? He was in 31 calls total out of thousands that were intercepted. The government, our position here on whether you can make a finding of bad faith on this record is that there is no evidence beyond the fact that he was not named to show that it was a deliberate and conscious attempt to disregard the requirements of Title III or to buy him a notice. The biggest fact in our favor is that he was given notice. And he was included in the body of the December 21st application, suggesting that he had a role in the criminal activity, which also evidences the fact that the government was not attempting to hide his identity from the district court. And the policy, the requirement of Title III is that the inventory must be given not only to the targets, but to the judge must be given a list of all those who are intercepted in order to decide whether discretionary notice is required. And the practice of this office and the policy of the department is to comply with that requirement. And our practice is to send notice to everyone, whether or not they were targets or simply intercepted. That would include persons wholly uninvolved in the criminal activity, if in fact we could recognize their, link their name to a number that was intercepted. Well, assuming that he was on all these tapes and that this was the failure to notify him is misdemeanor, good faith, whatever you want to call it. What does that mean? What is the result of that good faith error? There is no harm to the defendant. That's, I think, the beginning and the end in this case. When there's nothing in the record beyond speculation of nefarious motives, which just truly doesn't exist on this record, it's manufactured, I think, out of some other facts that are not before the court. You just have the fact that it didn't happen. But that alone doesn't mean bad faith. And when the fact that it didn't happen caused absolutely no prejudice to the defendant, suppression would just be a wholly inappropriate remedy. In the Supreme Court's case in Donovan, and this court in Harrigan, too, recognized these facts. And even in Harrigan, the court said there's no need for a remand in this case to explore the motives. When you have almost substantial compliance, almost complete compliance with the requirements, there's just simply no reason to think that the government would have risked an entire investigation involving 30 defendants and almost 50 named targets just to do something to this defendant that, in the end, didn't harm him at all. So I think on this record, it's very clear that there's no harm. The government's mistake was, at most, inadvertent. There's no evidence of bad faith, and suppression would not be an appropriate remedy. If there are no further questions, we'll rest on our leave with respect to the other issues. Thank you. Thank you. Harrigan states that suppression should be required when the statutory violation arose from a conscious decision by federal authorities to violate the law and prevent an individual or group of individuals from receiving the post-interception notice. At the time these officers were making these representations in a Title III affidavit, when they didn't include him as an unidentified male, did not include him as a target, he would not have, under that, received notification. I still would like to explain what prejudice your client had from all of this. Your Honor, there's two lines of this. When there's a violation that is not deliberate, intentional, and done in bad faith, then there is an analysis in terms of prejudice. However, when it is bad faith, deliberate, conscious decision to do that, to violate that law, which we have here, Your Honor, then suppression is required. What is the evidence of bad faith? Pardon? What is the evidence of bad faith? The evidence of bad faith, Your Honor, is that he's not included as an unidentified male. They knew he was there. In fact, if you look at the notion that they finally, before they conceded, Your Honor, that they knew about him in terms of the phone calls on their own admission, even if you don't look at the trial information on October 20th, that's before the October 24th Title III. But the facts here are completely consistent with either a conscious decision, which is what you'd like us to find, or an inadvertent mistake. The district court found the latter. And I get back to the question of motive. This is Harrigan, where we said that there's no reason to believe that the government, unless you can give some better reason, there's no reason to believe the government would jeopardize a multi-defendant investigation by leaving one person off the target list when it can't be shown that they have anything to gain by it, and where the person who's left off isn't hurt by it. That's consistent with the inadvertent mistake finding that the government urged and that the district court bought. First of all, in Harrigan, they didn't argue below the notion of really bad faith. Here, we argue below the bad faith. Again, I don't have officers saying the reason I did this was this. But they had, ultimately, on every single application, this was a main person that they were looking at. If you look at the detention hearing, when I asked about Mr. Rodriguez, the officer admitted that Mr. Rodriguez was known by police to be an associate of both Hidalgo and De Silva, the ones who had those phone numbers, from the outset of the investigation. So I thought their response was, even though they knew he was an associate, they didn't necessarily say that just because he was an associate that he was, therefore, engaged in criminal behavior with them. But they had phone calls, starting at least in 926, of an unidentified male who was on 1023, that they said, my client was actually going to go and assist somebody to get out of jail. That was on 1023. They knew at that time what his name was. So when we say they didn't marry him, that's not true. They married him up before the October 24, Title III. They married him up much earlier than that, in our view. I think it was October, August 12, I was looking at my notes, when the case agent sat down and said, this is so T, which was used in those phone calls. I don't buy the argument that the failure to list him would have jeopardized this whole criminal investigation, because it's not affecting everybody else. It's just affecting your client. But I'm trying to figure out, I guess I'm just struggling with Judge Selye's question. It's like, what is the evidence other than the fact that they didn't do it, a bad faith for not doing it? My view is that the fact that they couldn't just come out and say, we messed up. We should have put him in. We didn't. They've never done that. I've never had that opportunity. Well, counsel just accepted an error. No, she said that record shows that. We have never heard from these officers to say, you know what, we thought about it, we didn't put him in. Because that's what happened. Because they knew by October 23rd, beyond a doubt, that he was the one that was in the phone calls. And if I could just remind the court that when Harrigan said that the unseemliness that suppression should be required when the statutory violation rose from a conscious decision by the federal authorities to violate the law, the unseemliness of government officials deliberately disobeying the law is obvious. In our view, the interest of deferring is outweigh the cost of excluding the evidence at a minimum. Let me go back to the district court. Let us have our hearing. Let's figure this out. Because they have never provided a plausible record, a plausible explanation that is supported in the record at all. We are all surmising. But the evidence, the objective factors that we have shown, and are in my brief, show that this was a conscious and deliberate effort. Thank you. Thank you, counsel.